**Sandra L. HILL, Plaintiff–Appellant,**

v.

**BURRELL COMMUNICATIONS GROUP, INCORPORATED, formerly known as Burrell Advertising, Incorporated, Defendant–Appellee.**

No. 95–1658.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1995.

Decided Oct. 17, 1995.

Thomas J. Dillon, Roger J. McFadden, Tyrrel J. Penn (argued), McFadden & Dillon, Chicago, IL, for Plaintiff–Appellant.

Stephen P. Durchslag, Gerald C. Peterson (argued), Vanessa L. Smith, Winston & Strawn, Chicago, IL, for Defendant–Appellee.

Before CUMMINGS, BAUER and COFFEY, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff Sandra Hill filed this complaint under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e, *et seq.*). Hill, a white female, was discharged from Burrell Communications Group ("Burrell"), a mostly black company, after nine years as the company's Print Production Director. Hill was told that her position was being eliminated as part of a reduction in force. The district court granted Burrell's motion for summary judgment, and Hill now appeals. For the following reasons, we affirm.

### Background

Burrell is a marketing communications firm that develops advertising primarily for the African–American community. The company also develops advertising for the general market and offers public relations and consumer promotion programs for a variety of clients. Burrell's personnel is primarily comprised of black employees. Burrell hired Hill in 1982 as its Print Production Manager. At the time she was hired, Stewart Novy was her immediate supervisor. Novy told Hill that if Burrell had been successful in its search for an African–American candidate with the proper qualifications, Hill, a white employee, would not have been hired.

In 1987, Anna Morris, Executive Vice President and Creative Director, assumed responsibility for Burrell's creative functions and thus became Hill's immediate supervisor. Morris soon promoted Hill to the position of Director of Print Production. As Director, Hill was a member of the Operations Committee, and she had authority to incur and approve expenses, to select vendors independently, to negotiate with talent, to serve as a liaison with vendors and clients, to act as producer on a print shoot, to hire, train, and develop print production personnel, and to assure compliance with Burrell's minority vendor program within the Print Production Department.

Burrell suffered a decline in print production volume and revenue when it lost the business of three major clients and a reduction in work from other clients. Print production dropped from 30 ads in 1989 to approximately 15 in 1990. Mr. Burrell informed department heads that personnel cutbacks would be necessary. On February 1, 1991, Morris informed Hill that the position of Print Production Director would be eliminated and her employment therefore terminated effective March 1, 1991. Morris told Hill that her position was eliminated because of overall company downsizing. In 1991, 13 employees other than Hill were terminated— 11 black employees and 2 white employees.

In deciding to eliminate Hill's position, Morris considered the declining volume of print production along with the impending move to computerized paper-flow handling and decided that the Director's position along with its $50,000 annual salary was no longer justified. She concluded that the mechanical and technical functions could be performed by a supervisor and the Director's managerial functions could be absorbed by other managers. Thus Morris states that her reasons for terminating Hill were to reduce costs and to restructure print production. Morris also claims that Hill failed to satisfy Burrell's expectations. For example, Junette Smith, who was one of Hill's subordinates and a black employee, complained in 1989 that Hill relegated her to clerical chores and refused to consider her for a higher position. Another employee, Mary Bush, made a similar complaint. Burrell also received complaints that Hill refused to consider minority vendors for print production projects. In dismissing Hill, Morris stated that Hill "only uses minorities under duress."

In February 1991, Morris allegedly advised Glad Ball, Burrell's personnel administrator, that she had found a minority candidate to replace Hill. Ball apparently expressed surprise and told Morris that she was unaware of any problem with plaintiff. Morris interviewed Roxanne Hubbard, a black candidate, for the position of Print Production Supervisor in February 1991. Hubbard was offered the job and began work in April 1991 for $35,000 annually. Hill alleges that Hubbard had no prior agency print production experience and that her duties were substantially the same as Hill's duties. Morris claims that her first choice for the position was Anna Brown, a white candidate, but that Brown had already accepted other employment.

In October 1994, the district court granted defendant's motion for summary judgment on the ground that plaintiff's position was eliminated and her employment was terminated because of a steady decline in print production business. Upon reconsideration in February 1995, again granting defendant's motion for summary judgment, the district judge stated that Hill had not presented sufficient evidence to demonstrate that Burrell's proffered legitimate reason for firing her was pretextual.

### Discussion

■ This Court reviews the grant or denial of summary judgment de novo. *East Food & Liquor, Inc. v. United States,* 50 F.3d 1405, 1410 (7th Cir.1995). In so doing, all evidence submitted and the legitimate inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Id.;* see also *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142.

Plaintiff can create a triable issue of discrimination through direct or circumstantial evidence. Direct evidence of discrimination

is "evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents.... [A]nd since intent to discriminate is a mental state and mind reading not an accepted tool of judicial inquiry, it may be the only truly direct evidence of intent that will ever be available." *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 736 (7th Cir.1994). Plaintiff argues that Morris's alleged statement to Ball—"I believe I found a minority candidate to replace Sandra"—constitutes direct evidence of discriminatory intent. Morris's statement does not amount to an acknowledgment of discriminatory intent. Morris did not say that she sought to terminate Hill because she was white, nor does the statement in any way demonstrate that Morris sought to hire a new supervisor from a minority group. In *Troupe,* we cited *Mojica v. Gannett Co.,* 7 F.3d 552 (7th Cir.1993) (en banc), certiorari denied, — U.S. —, 114 S.Ct. 1643, 128 L.Ed.2d 363, as an example of direct evidence. In *Mojica,* the plaintiff was told that she was not promoted because she was not a black male. *Id.* at 561. Morris's alleged statement to a third party is far from the acknowledgment of discrimination that was direct evidence in *Mojica.*

■ In the absence of direct evidence, a Title VII plaintiff must meet the standard established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, for proving discrimination by circumstantial or indirect evidence. *Pilditch v. Board of Educ. of City of Chicago,* 3 F.3d 1113, 1116 (7th Cir.1993), certiorari denied, — U.S. —, 114 S.Ct. 1065, 127 L.Ed.2d 385. First, the plaintiff must establish a prima facie case of race discrimination. Once established, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action.[1] If defendant meets the burden, plaintiff must demonstrate that the employ-

---

1. Establishing the prima facie case only shifts the burden of production to the defendant; the burden of proof rests with the plaintiff throughout. *St. Mary's Honor Center v. Hicks,* — U.S. —, —, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). The practical consequence of this distinction, first made clear in *Hicks,* at the summary judgment stage is that the defendant need only produce some evidence of a nondiscriminatory motive to meet its burden of production. If the burden of proof shifted to the defendant and defendant failed to meet that burden, plaintiff would be entitled to summary judgment. *Hicks* essentially explains that defendant has a low hurdle to clear under *McDonnell Douglas.*

er's proffered reason is pretextual and that the employer's real reason for the adverse action was discriminatory. 411 U.S. at 802–805, 93 S.Ct. at 1824–26, 3 F.3d at 1116. This framework is such that once the defendant offers a legitimate, nondiscriminatory reason, the *McDonnell Douglas* framework "simply drops out of the picture," leaving the plaintiff with the ultimate burden of proving discrimination. 3 F.3d at 1116 (citing *Hicks,* — U.S. at ——, 113 S.Ct. at 2749).

■ A prima facie case is made out under *McDonnell Douglas* by showing that the plaintiff is a member of a racial minority group, that he applied for and was qualified for a job for which the employer was seeking applicants, that he was rejected, and that afterward the position remained open to others with plaintiff's qualifications. 411 U.S. at 802, 93 S.Ct. at 1824. Hill is not a member of a racial minority group. Thus applying the *McDonnell Douglas* standard literally in reverse discrimination cases such as this would prevent any plaintiff from making out a prima facie case. The standard, however, was never meant to be applied rigidly. *Id.* at 802 n. 13, 93 S.Ct. at 1824 n. 13. Therefore, in cases alleging reverse discrimination, assuming the *McDonnell Douglas* standard applies,[2] we have reasoned that the proper standard would require plaintiff to prove that she was meeting the employer's legitimate expectations, was adequately qualified for the job, was fired or not hired, and that the employer found a replacement of a different race. *Pilditch,* 3 F.3d at 1116 (citing *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1261 (7th Cir.1993), certiorari denied, ——

U.S. ——, 114 S.Ct. 1372, 128 L.Ed.2d 48; *Weiss v. Coca–Cola Bottling Co. of Chicago,* 990 F.2d 333, 336 (7th Cir.1993); *Fisher v. Transco Serv.–Milwaukee, Inc.,* 979 F.2d 1239, 1243 (7th Cir.1992)).

■ Plaintiff has established a prima facie case. It is clear that Hill was meeting Burrell's legitimate expectations. Nowhere in the record is it alleged that Hill failed to perform her responsibilities as Director. Burrell alleges that Hill only used minority vendors under duress, but this does not amount to an allegation that Hill failed to perform her job responsibilities. Nor is there any allegation that Hill was unqualified for her position as Director. On the contrary, it appears from the record that Hill was over-qualified for the position Burrell actually needed filled in production. After all, Burrell ultimately hired an employee that, from the record, appears less qualified than Hill. Hill was fired by Burrell. Finally, Hill has made sufficient allegations that she was replaced by Hubbard. Burrell maintains that Hill was not replaced; rather, her position as Director was eliminated and Burrell hired Hubbard as a supervisor. On summary judgment, where we view the facts and inferences therefrom in the light most favorable to the non-movant, Hill's allegations that Hubbard performed substantially the same duties as Hill combined with the temporal proximity of Hill's termination and Burrell's hiring of Hubbard are sufficient to establish a prima facie case, thus shifting the burden of production.

**2.** While it is clear that Title VII protects members of both majority and minority groups from race-based discrimination, *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 279–280, 96 S.Ct. 2574, 2578–79, 49 L.Ed.2d 493, it is not clear that the *McDonnell Douglas* formula applies in Title VII reverse discrimination cases. It remains an open question in this Circuit. *Pilditch,* 3 F.3d at 1116 n. 1; *Kirk v. Board of Educ. of Bremen Comm. High Sch. Dist., No. 228,* 811 F.2d 347, 354 n. 10 (7th Cir.1987); *Coates v. Johnson & Johnson,* 756 F.2d 524, 531 (7th Cir. 1985). The Supreme Court did not appear to limit its holding in *McDonnell Douglas* to discrimination against racial minorities. Nor are we able to discern any principled reason for applying one formula for the allocation of burdens of production in discrimination cases involving minorities and a different formula in reverse discrimination cases, especially since the rationale for the *McDonnell Douglas* formula is the difficulty of proving discrimination in general. See *Hicks,* —— U.S. at ——, 113 S.Ct. at 2746; *id.* —— U.S. at ——, 113 S.Ct. at 2757 (Souter, J., dissenting). Nonetheless, we decline to resolve this issue since the disposition of this case would not be affected. As in *Pilditch,* 3 F.3d at 1116 n. 1, the plaintiff here has established a prima facie case and the defendant has put forth a nondiscriminatory reason for its action. Therefore, the *McDonnell Douglas* formula drops out and plaintiff is left with the ultimate burden of proving discrimination—as would be the case if *McDonnell Douglas* did not apply in reverse discrimination cases.

Burrell, however, has advanced legitimate, nondiscriminatory reasons for Hill's termination. Burrell asserts that its primary reason for eliminating Hill's position was an overall downsizing. This reason is legitimate given the fact that Burrell's print production dropped significantly prior to Hill's termination—from 30 ads in 1989 to approximately 15 in 1990. Also prior to Hill's termination, Mr. Burrell informed department heads that personnel cutbacks would be necessary. The fact that 13 employees other than Hill were terminated the same year adds legitimacy to Burrell's reason.

Since Burrell has advanced a legitimate, nondiscriminatory reason, the *McDonnell Douglas* framework essentially drops out, leaving Hill with the burden of proving discrimination. To survive summary judgment, Hill must establish facts from which a rational trier of fact could reasonably infer that the defendant fired the plaintiff for discriminatory reasons. In *Troupe, supra*, we identified three types of circumstantial evidence of intentional discrimination:

> The first consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn.... Second is evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment. And third is evidence that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination.

20 F.3d at 736. From these guidelines, it must be determined whether a rational trier of fact could find in favor of plaintiff. Hill presented evidence in the first and third categories.

Hill presented two pieces of circumstantial evidence in the first category, both of which are ambiguous oral statements from which Hill infers discriminatory intent. First, when Hill was hired, Stewart Novy told her that if Burrell had been successful in its search for an African–American candidate with the proper qualifications, she would not have been hired. This statement, made in 1982, is too remote in time to convince a reasonable factfinder that Morris's 1991 decision to terminate Hill was racially motivated.

Second, when Hill was terminated, Anna Morris told Glad Ball that Morris had found a minority candidate to replace Hill. Despite this statement, there is simply no evidence that Morris told anyone that Hill was being terminated because she was not black. Indeed, Anna Brown, a white candidate, was Morris's first choice for the new position of Print Production Supervisor. This, of course, discredits plaintiff's claim that Morris was looking for a black person to succeed plaintiff. Indeed, Hill admitted that Morris never used racially derogatory language and that no one at Burrell ever told her that the company had a policy of firing white employees first. Moreover, excluding Hill, of the 13 employees terminated in 1991 because of Burrell's decision to cut costs and reduce its work force, 11 were black and 2 were white. Also, in 1991, the key year, Burrell terminated its black comptroller and replaced him with a white employee. Based on this evidence, a reasonable factfinder could not conclude that Morris's ambiguous statement to Ball reveals a discriminatory intent.

In the third category, Hill alleges that she was replaced by Roxanne Hubbard, a black candidate, to perform the same duties as Hill, even though Hubbard was less qualified than Hill. Other evidence substantially negates this allegation. First, the evidence shows that Hubbard's duties as supervisor were not identical to Hill's duties as director. In fact, as part of its reorganization of print production, Burrell took the managerial responsibilities away from the new supervisor—responsibilities that Hill had previously fulfilled as Director. This fact further undercuts the importance of Hill's allegations: Hubbard was less qualified than Hill because that is precisely what Burrell wanted. Because of the restructuring, Burrell decided

that Hill's responsibilities and salary were no longer justified. Thus Hubbard was not given Hill's position but instead received the lesser title and duties of Print Production Supervisor with a lower salary than Hill.

In an attempt to show that Burrell's restructuring and downsizing were pretextual, Hill contends that if defendant really wanted to save money, it should have elevated another employee, Mary Bush. However, almost every art director complained about Bush's bad attitude, and Hill herself blamed Bush for problems on a certain assignment and gave her a negative evaluation. Burrell ultimately terminated Bush because of Hill's negative evaluation. Morris stated in her deposition that her decision to terminate Bush was based in part on Hill's review stating that Bush needed more experience, was too emotional, needed to work on how she talked to people, and was tardy. Hill also stated that Bush needed more training to fill the position of Print Production Supervisor. Consequently, it is ludicrous for Hill to assert that Burrell should have promoted Mary Bush instead of choosing Hubbard to be Print Production Supervisor.

The fact that Burrell did more in pursuit of its restructuring and downsizing, such as terminating other employees, than just firing plaintiff defeats Hill's attempt to show pretext. As in *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1126 (7th Cir.1994), Hill presented no evidence to contradict defendant's showing that the desire to reduce costs motivated Hill's termination. Hill simply has failed to present evidence upon which a reasonable factfinder could infer that discrimination was the true reason for her discharge and that defendant lied about the reasons for its actions.

In *Pilditch*, 3 F.3d at 1113, a white school principal was terminated allegedly because he was not black. As in that case, there is a "singular lack of evidence" that Hill "was fired and not rehired" because she is white. *Id.* at 1118. As there, the only way to conclude, based on this record, that Hill was discriminated against is to make an insupportable assumption that the decision to replace her was motivated by race rather than defendant's proffered reasons. Such an as-sumption is impermissible. *Ustrak v. Fairman*, 781 F.2d 573, 577 (7th Cir.1986), certiorari denied, 479 U.S. 824, 107 S.Ct. 95, 93 L.Ed.2d 47. As we said in *Ustrak*, "no presumption of discrimination can be based on the mere fact that a white is passed over in favor of a black." 781 F.2d at 577 (citing *Lanphear v. Prokop*, 703 F.2d 1311, 1315 (D.C.Cir.1983); *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63 (6th Cir.1985)).

As in *Pilditch*, we conclude that there is no direct or circumstantial evidence in the record showing that defendant intentionally discriminated against plaintiff. The judgment of the district court is therefore affirmed.