Paul M. MURPHY, Plaintiff,

v.

MILWAUKEE AREA TECHNICAL COLLEGE, Defendant.

No. 96–C–0117.

United States District Court, E.D. Wisconsin.

Sept. 15, 1997.

Michael O. Bohren, Marola & Bohren, Milwaukee, WI, for Plaintiff.

Sarah J. Elliott, von Briesen, Purtell & Roper, Milwaukee, WI, for Defendant.

### MEMORANDUM AND ORDER

GORENCE, United States Magistrate Judge.

Plaintiff Paul Murphy filed this action alleging reverse discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Specifically, the plaintiff, a licensed Wisconsin attorney, alleges that defendant Milwaukee Area Technical College (MATC) did not hire him for a full-time paralegal teaching position for which he was the most qualified candidate because of his race and sex. This case was assigned to this court according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 13.03 (E.D.Wis.). The parties have consented to United States magistrate judge jurisdiction. Presently pending is the defendant's motion for summary judgment which will be addressed herein.

### STATEMENT OF FACTS

The relevant facts in this case are largely undisputed. The plaintiff, a white male, is an attorney licensed to practice law in the State of Wisconsin who taught part-time at MATC. In 1990, a full-time paralegal instructor position in the Business Division at MATC became vacant. Dr. Philip Langerman, MATC's Vice President of Academic Affairs, discussed filling the position with Patricia Holy, then Dean of the Business Division, and Ron Radtke, Associate Dean of the Business Division. A personnel requisition form was prepared and forwarded to the Human Resources Division which drafted a job posting for the paralegal instructor position. The job was posted on July 27, 1990. The personnel requisition form indicated that this was an "underutilized position" in regard to blacks and Hispanics. On August 14, 1990, the plaintiff submitted an application for the paralegal teaching position.

The "Qualifications" listed on the July 27, 1990, posting included the following: 1) a bachelor's degree and a law degree; 2) a minimum of two years of experience in the practice of law; 3) ability to meet state vocational, technical and adult education (VTAE) certification requirements; 4) ability to communicate effectively both orally and in writing; 5) ability to relate successfully with students and staff; 6) experience in the utilization of a paralegal is preferred; and, 7) previous teaching experience is desirable. The plaintiff states that by letter dated September 26, 1990, he was advised that the job was being reposted and that he would be considered for the position unless he affirmatively withdrew his name.

On October 2, 1990, the position was reposted based on changes in the job qualifications. The October, 1990, posting added to item 2 of the "Qualifications" section *experience as a paralegal* as an alternative to *experience in the practice of law.* Item 6 was changed to add *experience as a paralegal* as an alternative to *experience in the utilization of a paralegal.* The posting also added as Item 8: "Experience with computers in a law office was desirable."

Sixty-six applications were received and a screening committee consisting of Dorsey Kendrick, the Dean of the Business Division, Mike Walsh, Dean of Printing, James Miersma, Don Lubner and Ron Radtke, the Associate Dean of the Business Division, determined who would be interviewed. Miersma and Lubner were attorneys on the MATC staff who taught paralegal courses. The plaintiff was one of 15 candidates interviewed by the screening committee. He was interviewed on December 5, 1990. The plaintiff received the highest average score of all the candidates interviewed.

Initially, the screening committee recommended three candidates to proceed to the next level of interviews, a white female and two white males, one of whom was the plaintiff. A black male applicant who scored second highest in the interview was not recommended for the next step in the process. When Vicky Beckman, the personnel specialist in the Human Resources Department responsible for recruitment for the paralegal

instructor position, noticed that the black male applicant had not been recommended for the next set of interviews, she asked Mr. Radtke if he would recommend four people for the next interviews. He agreed, and after discussing the list with Dr. Romanger Fredericks, the Director of Human Relations, Ms. Beckman added the black male applicant to the list of candidates. Thus, the plaintiff was one of four candidates recommended to the hiring authority.

In a memorandum dated January 11, 1991, Dr. Fredricks wrote to Ms. Beckman expressing concerns about the effect of the changes in listed qualifications, and several questions used in the interview sessions. He wrote as follows:

> After a very careful review of the materials and the conversation that you and I had, I would like to share with you my: Findings....
>
>> That the job advertisement for the Paralegal Instructor was posted on July 27, 1990 and was changed inappropriately on October 2, 1990 to reflect the changes:
>>
>> a. "Two (2) years of experience in the practice of law" changed to *"2 years experience as a paralegal or in the practice of law."*
>>
>> b. "Experience in utilization of a paralegal is preferred" was changed to *"experience as a paralegal or experience in the utilization of a paralegal is preferred."*
>>
>> c. "Experience with computers in a law office setting is desirable" was not a qualification on the first posting.
>
> Qualifications included a law degree. A law degree may be preferred but it is not a qualification for the position. As you know, consideration of degrees or formal education in making hiring decisions may be unlawful when there is a disparate impact on some groups such as minorities and the employer is unable to show that a degree or education is necessary for the performance of job.
>
> Several questions used in the interview session were inappropriate and/or unlawful:

>> Question #2 ... Do you currently hold a license to practice law? In which state and what is your number?
>
> Nowhere in your announcement was it indicated that a license was required or preferred. It must be understood that an employer may wish to inquire as to an applicant's educational history, but care should have been taken to ensure that *only clearly job* related education was considered.
>
>> Question #8 ... "Other legal specialty courses in the program are Legal Research, Civil Procedure, Legal Writing, Litigation, Trusts and Estates, Collections, and Bankruptcy. Please indicate your qualifications and your interest in teaching each of these courses;"
>>
>> Question #9 ... "Do you have any other training or experience that might lead to initiation of additional legal specialty areas?;"
>>
>> Question #10 ... "Please give us a few examples which demonstrate your ability to relate to a culturally diverse student population;" and Question #11 ... "Why did you leave your present position?"
>
> All of the above questions were inappropriate and were not a part of the job descriptions, and added nothing to the selection process.
>
> Concerns....
>
>> That applicants were not given an equal opportunity at this job.
>>
>> That the legality of the entire hiring process for this position was eroded when the changes in the job description were made and inappropriate questions were used.
>
> Recommendations....
>
>> That this position be readvertised and all candidates who applied be notified in writing.
>>
>> That the announcement be reviewed by the Human Relations/
>>
>> Affirmative Action Office before posting;
>>
>> That the committee selected for interviewing candidates have an Affirmative

Action briefing before the interview process.

That questions be used (sic) in the interview process be approved by the Human Relations/Affirmative Action Office.

On February 6, 1991, the defendant notified the plaintiff by letter that the position had been re-evaluated, a new job description developed and that a new interview would be conducted. The plaintiff was further advised that if MATC did not hear from the plaintiff by February 22, 1991, it would assume he was still interested in the position. On February 9, 1991, the full-time paralegal position was reposted. Item 1 in the "Qualifications" section was changed to indicate that the applicant "Must have a Bachelor's degree. A law degree is preferred." The position was not designated as an "under-utilized position."

The screening process was re-initiated and Ms. Beckman made a list of candidates whose applications were received and who met the minimum qualifications. The plaintiff's name was not on the "Paralegal Instructor Applicant Review List" dated May 28, 1991.

A completely new screening committee was established which reviewed and narrowed the list of applications. The plaintiff was not among the ten candidates interviewed in June, 1991. The screening committee recommended three candidates to proceed to the next level—a black female, a white male and a black male. The three finalists were interviewed by a four member committee. Carol Brady, a black female, was recommended for hire and was hired as the paralegal instructor. She received her bachelor's degree from Howard University in 1993, and graduated from Southern University School of Law in 1981, but was not licensed to practice law in Wisconsin.

The plaintiff filed a charge of sex and race discrimination with the Equal Employment Opportunity Commission (EEOC). He received a Notice of Right to Sue dated October 31, 1995.

### SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also, Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *McNeal v. Macht,* 763 F.Supp. 1458, 1460–61 (E.D.Wis.1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of showing the needlessness of a trial—(1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law—is upon the movant.

However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Anderson,* 477 U.S. at 267, 106 S.Ct. at 2519–20; *see also, Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553. "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552 (emphasis added). All inferences are taken in the light most favorable to the nonmoving party. *Matter of Wade,* 969 F.2d 241, 245. (7th Cir.1992).

### ANALYSIS

■ In moving for summary judgment, defendant MATC asserts that the plaintiff has failed to allege the requisite elements of a prima facie claim of reverse discrimination under Title VII. In the traditional Title VII action, a plaintiff can prove discrimination in one of two ways. He can meet his burden of proof by offering direct proof of discriminatory intent or he can rely on the burden shifting method of proof set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93

S.Ct. 1817, 36 L.Ed.2d 668 (1973) for proving discrimination by indirect evidence. *Sample v. Aldi, Inc.,* 61 F.3d 544, 547 (7th Cir.1995); *DeLuca v. Winer Industries, Inc.,* 53 F.3d 793, 797 (7th Cir.1995). Under the *McDonnell Douglas* framework, the plaintiff first must establish by a preponderance of the evidence a prima facie case. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Hill v. Burrell Communications Group, Inc.,* 67 F.3d 665, 667 (7th Cir.1995). Once established, the burden of production shifts to the employer to articulate some legitimate, non-discriminatory reason for the adverse action about which the plaintiff complains. If the employer meets this burden, the plaintiff must demonstrate that the employer's stated reason was pretextual. Ultimately the plaintiff must demonstrate that the employer's real reason for the action was discriminatory. *Hill,* 67 F.3d at 667–668.

To demonstrate a prima facie case of discrimination, a plaintiff must show: 1) that he is a member of a protected class; 2) that he applied and was qualified for a job for which the employer was seeking applicants; 3) that despite his qualifications, he was rejected; and, 4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of plaintiffs qualifications. *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824; *Hill,* 67 F.3d at 668.

Because the plaintiff is a white male, his claim is one of reverse discrimination. The plaintiff has produced no direct evidence of discrimination on the basis of his gender or race. Therefore, the *McDonnell Douglas* framework will be utilized, although this court notes that it is an open question in this circuit whether that analysis is the proper one where reverse discrimination is alleged. *Hill,* 67 F.3d at 668 n. 2; *see also, Greenslade v. Chicago Sun–Times,* 930 F.Supp. 323, 328 n. 1 (N.D.Ill.1996), *affirmed.* 112 F.3d 853 (7th Cir.1997).

Strict application of the *McDonnell Douglas* standard would eliminate all cases of reverse discrimination by preventing a plaintiff from making out a prima facie case because, by definition, the plaintiff is not a member of a protected class. *Hill,* 67 F.3d at 668. In reverse discrimination cases, some courts have modified the first *McDonnell Douglas* factor to allow a male plaintiff to establish a prima facie case of intentional disparate treatment if he alleges "background circumstances support[ing] the suspicion that the defendant is that unusual employer who discriminates against the majority." *O'Patka v. Menasha Corp.* 878 F.Supp. 1202, 1206–07 (E.D.Wis.1995) (citing *Kelsay v. Milwaukee Area Technical College,* 825 F.Supp. 215, 218–19 [E.D.Wis.1993] (quoting *Parker v. Baltimore and Ohio R.R.,* 652 F.2d 1012, 1017 [D.C.Cir.1981] ); *Harding v. Gray,* 9 F.3d 150, 153 (D.C.Cir. 1993). *see also, Notari v. Denver Water Dept.,* 971 F.2d 585, 589 (10th Cir. 1992); *Murray v. Thistledown Racing Club,* 770 F.2d 63, 67 (6th Cir.1985)). The Court of Appeals for the Seventh Circuit has acknowledged but not expressly adopted this standard. *See Christensen v. Equitable Life Assurance Society,* 767 F.2d 340, 343 (7th Cir.1985), *cert. denied,* 474 U.S. 1102, 106 S.Ct. 885, 88 L.Ed.2d 920 (1986).

Courts have determined that this modification is necessary because a prima facie case under the *McDonnell Douglas* test raises an inference of discrimination "only because we presume these acts if otherwise unexplained, are more likely than not to be based on consideration of impermissible factors." *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). These presumptions are based upon a plaintiff's membership in an historically disfavored group which are not necessarily justified when the plaintiff is a member of a historically favored group. *Livingston v. Roadway Express, Inc.,* 802 F.2d 1250, 1252 (10th Cir.1986).

In formulating this "background circumstances" test in reverse discrimination cases, courts have acknowledged that is not an additional hurdle for white plaintiffs. *Harding,* 9 F.3d at 154. Nor is designed to disadvantage the white plaintiff who is entitled to the same protection under Title VII as a minority plaintiff. *Id.; McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 280, 96 S.Ct. 2574, 2578–79, 49 L.Ed.2d 493 (1976). Rather, this requirement "merely substitutes for the minority plaintiff's burden

to show he is a member of a racial minority; both are criteria for determining whether the employer's conduct raises an 'inference of discrimination.' " *Harding*, 9 F.3d at 153 (citing *Bishopp v. District of Columbia*, 788 F.2d 781, 786 [D.C.Cir.1986] ).

" 'Background circumstances' means simply that in our society, where 'reverse discrimination' is the exception, white plaintiffs must show more than the mere fact that they are white before their non-selection in favor of a minority candidate will raise an inference of discrimination." *Harding*, 9 F.3d at 154. Background circumstances does not necessarily mean "some circumstances in the employer's background." *Id.* Thus, the non-minority plaintiff who establishes that he was better qualified than the minority candidate selected has stated sufficient background circumstances to establish his prima facie case. *See Id.*

This court finds the reasoning underlying the formulation of the background circumstances test persuasive and will use the "background circumstances" element in determining whether or not the plaintiff has made out a prima facie case of reverse discrimination.

The fourth prong of the *McDonnell Douglas* analysis also has been modified. In *Hill*, the court reasoned that the proper standard in reverse discrimination cases "would require plaintiff to prove that [he] was meeting the employer's legitimate expectations, was adequately qualified for the job, was fired or not hired, and that the employer found a replacement of a different race [or gender]." *Id.* (citing *Pilditch v. Board of Education of City of Chicago*, 3 F.3d 1113, 1116 [7th Cir, 1993], *cert. denied*, 510 U.S. 1116, 114 S.Ct. 1065, 127 L.Ed.2d 385 [1994].) However, in light of the Supreme Court's decision in *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 878, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996), the plaintiff need not prove that he was replaced by a person who was a member of a different group. "That one's replacement is of another race, sex or age may help to raise an inference of discrimination, but it is neither a sufficient nor a necessary condition." *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996). Thus, in modifying the fourth step of the analysis, the court stated that the proper

question is "whether the plaintiff has established a logical reason to believe that the decision rests on a legally forbidden ground." *Id.*

With this overview, the court will now address whether the plaintiff has met his burden of establishing a prima facie case. The plaintiff asserts that the background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority. The plaintiff questions the reposting and modification of the job description at the direction of Romanger Fredricks. He contends that the first interview met the defendant's affirmative action requirements and that there was no legitimate reason to have other postings. The plaintiff is basing his claim on the facts that: 1) the position was reposted and the qualifications were modified after the plaintiff was a finalist for the position, 2) that he was not included in the last posting process, and 3) a black female was chosen for the position.

The plaintiff does not present evidence that he was more qualified than the person selected for the position or that the defendant had some reason or inclination to discriminate individually against white males. *See Harding*, 9 F.3d at 153. He does not present facts to show to support the suspicion that the defendant is an employer that discriminates against the majority. The undisputed facts show that the defendant posted for a teaching position, revised the required job qualifications, reposted the position and interviewed the top candidates. Four candidates, a white female, a black male and two white males, one of whom was the plaintiff, were recommended to the hiring authority. Three months after this second posting, the defendant's human relations director questioned the changes in the listed job qualifications and expressed concerns about the lawfulness and appropriateness of several questions utilized in the interview process. The decision was then made to repost the job a third time.

Neither party offers any explanation as to why the plaintiff's name was not included in the third posting and selection process. The plaintiff merely states that "[l]osing or mis-

placing plaintiff's application for the second series of interviews, removed the strongest white male candidate from the interview process." (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment at 8). However, the reposting of the position was necessitated, in part, by the fact that the requirement of a law degree was not job-related and could not be justified.

The procedures employed by the defendant for recruiting and hiring a paralegal instructor are not a model for personnel practice and show little consideration for the applicants actively seeking employment. However, the defendant's scrutiny and modification of the posting and hiring process does not raise an inference of discrimination. The defendant's motivation was to ensure that the qualifications for the position and the questions asked of interviews were job related. Moreover, the final list of candidates recommended by the screening committee was comprised of a black female, a white male, and a black male. Thus, there is no showing that the selection of a white person or a male was foreclosed. The fact that the four-member committee which interviewed these applicants selected the black female. for the position does not establish that the defendant had some reason or inclination to discriminate against white males.

The plaintiff has also failed to show that he was more qualified than the person selected for the position. The black woman chosen for the job was a lawyer as is the plaintiff, although she was not licensed to practice in Wisconsin. Since the job at issue was for a full-time paralegal instructor in the Business Division, a license to practice law was not a necessary job requirement. Moreover, a law degree was not considered a job-related qualification. There is no evidence that given the nature of the job, the plaintiff was more qualified. *See Harding,* 9 F.3d at 153 (citing *Parker,* 652 F.2d at 1017).

The plaintiff has failed to present facts and circumstances sufficient to raise an inference of discrimination. He has merely shown that he is a white male and that the person hired was a black female. This is insufficient to establish the suspicion that the defendant is that unusual employer who discriminates against the majority. *Harding,* 9 F.3d at 154. Thus, the plaintiff has failed to estab-lish the first prong of a prima facie case of reverse discrimination.

■ The plaintiff has also failed to establish a logical reason to believe that the defendant's decision rests on a "legally forbidden ground." *See Carson,* 82 F.3d at 159. While hardly a model of good personnel procedures, the defendant's actions evince an attempt to make sure the job qualifications and hiring process were fair, equitable and legal. While the failure to include the plaintiff's application in the final application process is unexplained, that fact alone is insufficient to create an inference of discrimination in this case.

At the summary judgment stage, the plaintiff bears the burden of showing that there is a genuine issue of material fact because he has the burden of establishing his prima facie case at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. Although the facts must be viewed in the light most favorable to the non-moving party, the plaintiff must support his claim with facts in the record.

The plaintiff has failed to establish a *prima facie* case of reverse discrimination and, thus, his claim is subject to dismissal upon summary judgment. The defendant's motion for summary judgment will be granted.

The court notes that in resolving summary judgment motions in discrimination cases, it ordinarily addresses the alternative issues of whether a defendant has demonstrated that it had a legitimate, nondiscriminatory reasons for its actions and whether a plaintiff has presented sufficient evidence to show that the legitimate, nondiscriminatory reasons are pretextual. However, those issues have not been addressed by the parties and therefore will not be addressed by the court.

### ORDER

**NOW, THEREFORE, IT IS ORDERED** the defendant's motion for summary judgment be and hereby is **GRANTED.**

**IT IS FURTHER ORDERED** that the Clerk of United States District Court enter judgment accordingly.