**Michael PERRY, Plaintiff,**

v.

**COMMUNITY ACTION SERVICES, Defendant.**

**No. 98 C 5174.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 26, 2000.

Timothy M. Nolan, Nolan Law Office, Chicago, IL, for Plaintiff.

Teresa C. Kopriva, Querry & Harrow, Ltd., Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff entered into an employment agreement with the defendant which was terminated four months after it was executed. He sues for race discrimination and breach of contract. Defendant moves for summary judgment on all claims, which I deny; plaintiff moves for summary judgment based on breach of employment contract, which I grant in part, and for a protective order, which I deny.

### I. Background

The defendant, Community Action Services, Inc. ("CASI"), is a not-for-profit organization that provides community-based busing for school children. The plaintiff, Michael Perry, began working with CASI in 1985 when CASI contracted with ATE Management Company ("ATE"), a management consulting and placement firm servicing the transportation industry. In spring of 1996, CASI's business relationship with ATE ended; Mr. Perry contin-

ued at CASI with another agency. Although not an "employee" in the strict sense, Mr. Perry ran CASI's operations on a day to day basis for approximately twelve years. In April 1997, CASI and Mr. Perry entered into an employment agreement (the "Agreement") whereby Mr. Perry worked directly for CASI as President and Chief Executive Officer ("CEO"). The Agreement was signed by Mr. Donaldson, then the acting chairperson of the CASI Board of Directors (the "Board"). Mr. Perry is white, and Mr. Donaldson is African–American, as were all but one of the members of the Board at the time Mr. Perry's contract was signed.

In the summer of 1997, friction arose between Mr. Perry and the Board, specifically Chairperson Donaldson, about the management of CASI. The Board ordered Mr. Perry to release two employees, an accountant and a management supervisor, who were white. He disagreed with this decision. On July 15, 1997, the Board passed a motion to renegotiate Mr. Perry's employment agreement. At a September 9, 1997 board meeting, Mr. Donaldson suggested that CASI increase its minority representation in management and move some of its funds to a minority-owned bank.

On September 12, 1997, Mr. Perry sent a letter to Mr. Donaldson and Mr. Robert Wharton, the President of the Community Economic Development Association ("CEDA"), which expressed his disagreement with recent Board actions and belief that the safety and fiscal soundness of CASI were at risk and could no longer be personally guaranteed by him. CEDA had founded CASI to provide transportation services for its Head Start program, and CASI's contract with CEDA was its primary source of income. CEDA also maintains a significant presence on CASI's Board of Directors.

On September 30, 1997, the Board voted to terminate Mr. Perry's employment with CASI effective October 1, 1997, pursuant to paragraph 9C of the Employment Agreement and sent him a letter to this effect. Mr. Perry received a severance payment equivalent to six months' salary. Mr. Perry's former functions have been outsourced by CASI to independent contractor Ernest R. Sawyer Enterprises, which has placed an African–American as acting general manager of CASI.

Mr. Perry filed this action alleging race discrimination in violation of Title VII and breach of contract under Illinois law by CASI. The parties have filed cross motions for summary judgment.

## II. Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999). I review the entire record, drawing all reasonable inferences from the record in the light most favorable to the non-moving party. *Cornfield by Lewis v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1320 (7th Cir.1993). The party opposing the motion, however, must make a showing sufficient to establish any essential element for which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. Title VII Claims concerning Mr. Perry's Termination

Under Title VII, it is unlawful for an employer "to discharge any individual ... because of such individual's race." 42 U.S.C. § 2000e–2(a)(1)(1988). The Supreme Court has held that Title VII applies to white employees as it does to all races. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Hill v. Burrell Communications Group, Inc.*, 67 F.3d 665 (7th Cir.1995).

A plaintiff may present direct or indirect evidence to demonstrate unlawful race discrimination. Direct evidence is evidence of bias "that can be interpreted as an acknowledgment of discriminatory intent

by the defendant or its agents." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir.1994). The direct evidence of racial discrimination offered by Mr. Perry consists of statements made by Chairperson Donaldson.[1] During a Board meeting, Mr. Donaldson announced his goal for CASI to place some funds in a minority-owned bank and "to bring more African–Americans and minorities into the process because that's who we service, that's our mission. And even to the point of hiring people here in this agency, especially on the upper-echelon of management. That's what we're going to do." Mr. Perry claims that he was the only person in upper management at CASI, and so, as a white man, did not fit the mission of CASI as conceived by Mr. Donaldson. As a result, he was terminated and replaced with an African–American manager with less experience. CASI argues that this innocuous statement is taken out of context and is insufficient to demonstrate any discriminatory animus. CASI also disputes Mr. Perry's claim that he is the only upper management employee or that there were no white managers.

■ For purposes of this motion, I must accept that Mr. Perry was the only person in the "upper echelon" of CASI's management. Moreover, Mr. Donaldson's statement was made only three weeks before Mr. Perry was terminated. A reasonable trier of fact could conclude that this statement, which dealt explicitly with employment and was made by an aggressive Chairperson who was admittedly taking a more active role in the management of CASI, was probative of discrimination and "causally related to the discharge decision making process." *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir.1996). From the record, Chairman Donaldson appears to be the primary decision maker at CASI and the impetus behind the restructuring of the organization.

■ Mr. Perry can also make an indirect prima facie case having shown sufficient "background circumstances" to "support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Mills v. Health Care Service Corp.*, 171 F.3d 450, 455 (7th Cir.1999) (*quoting Taken*, 125 F.3d at 1369). The decision-makers involved in the termination of Mr. Perry, the Board and its Chairman, are African–Americans, and Mr. Perry was "replaced," i.e. his duties were assumed, by an African–American general manager with considerably less management experience than he and none in the busing industry.[2]

Because CASI offers multiple reasons in support of its termination decision, Mr. Perry must show that all were pretextual. *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir.1996). CASI alleges a pattern of insubordination by Mr. Perry, which he refutes. Mr. Perry denies each and every one of CASI's allegations in his sworn affidavit, offers other testimony corroborating his version of the events, and points to the lack of formal direction in the Board minutes. Notably, CASI alleges that Mr. Perry failed to make travel reservations for Mr. Donaldson to attend a convention, claimed all convention rooms were sold out, and instead attended the convention

---

1. Mr. Perry offers an affidavit by a co-worker recounting speculation about the Board from another non-decisionmaker co-worker. I ignore this as irrelevant and inadmissible. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir.1997) (Hearsay is inadmissible in the summary judgment context to the same extent that it is inadmissible in a trial).

2. In *Mills*, the Seventh Circuit adopted the "background circumstances" approach to establishing a prima facie reverse discrimination case under Title VII, holding that a plaintiff may, in lieu of showing he is a member of protected class, show at least one of the background circumstances giving rise to an inference of discrimination that certain other courts have alluded to, such as employee being clearly more qualified than the person ultimately hired, an employer expressing intense interest in hiring person from protected class, or when the employer's decision-makers are members of a minority group while the employee is one of few so-called majority members at an organization. *Mills* at 455.

with Ms. Crawford, then a CASI employee and currently Mr. Perry's partner in a new business. Mr. Perry offers evidence that Ms. Crawford was over 1000 miles away at the time, visiting her parents.

CASI also claims that it terminated Mr. Perry to cut costs and asserts that Mr. Perry's salary and benefits totaled $93,000 while the management consulting contract, which includes three staff, is less than $83,000 annually. Again, Mr. Perry offers the affidavit testimony of the witness who prepared the checks payable as well as supporting documentation that the defendant has understated the costs associated with his "replacement," who he alleges has no experience in the transportation industry.

Finally, CASI claims it released Mr. Perry because he made accusations of a lack of quality and safety in busing operations and fiscal management to CEDA, by far its largest source of income. While it is understandable that CASI's board would find this upsetting, even disloyal, Mr. Perry argues that CEDA formed CASI and still maintains an active presence on its Board. Indeed, there is evidence in the record that Mr. Donaldson himself felt obligated to communicate with Mr. Wharton at CEDA regarding significant CASI matters. Therefore, Mr. Perry may have reasonably believed he had a duty to report his legitimate concerns to CEDA. An employer's nondiscriminatory reason is sufficient so long as it is honestly held. However, based on the other evidence offered by CASI regarding its reasons for firing Mr. Perry, a reasonable trier of fact might doubt the honesty of CASI's assertion with regards to Mr. Perry's letter copied to CEDA. Thus, there is sufficient evidence to bring this issue to trial.

CASI's last argument relies on the "common actor presumption," which arises when a person is hired and fired by the identical person within a relatively short time period. *See Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 399 (7th Cir.1997) (court declared it highly doubtful that a person who hires an employee would fire that same employee less than two years later as a result of discrimination). Mr. Perry has presented sufficient evidence to rebut this presumption of nondiscrimination; based on Mr. Donaldson's race-conscious statements regarding the future direction of the organization, a jury could believe that he had changed his mind and determined that CASI would be better led by an African–American.

### IV. *Contract Claims*

Both parties have moved for summary judgment on Mr. Perry's breach of contract claims. Mr. Perry claims that CASI breached the Agreement by (1) terminating him within the three year contract term without notice and for a reason not permitted by the Agreement, and (2) failing to pay the compensation and benefits provided for in the Agreement. CASI contends that by paying Mr. Perry six months of severance pay, it terminated him in full compliance with the Agreement.

■ By its terms, the Agreement is governed by the laws of the State of Illinois. In Illinois, contract interpretation is a question of law for the court and is governed by the "four corners" rule of contract interpretation, which provides that "[a]n agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence." *Western Illinois Oil Co. v. Thompson*, 26 Ill.2d 287, 291, 186 N.E.2d 285 (1962); *see also Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir.1998) (if a contract contains no ambiguity, courts may not use extrinsic evidence to interpret it— the language of the contract alone must rule).

Although this is not the most artfully worded contract, it is not ambiguous. The deposition testimony and other parol evidence offered by the parties in support of their varying interpretations of what was

intended by the contract is therefore irrelevant and not considered herein. The Agreement provides that Mr. Perry will be the President and CEO of CASI for a three year term of employment beginning May 1, 1997. CASI's assertion that the Agreement is really a one year contract renewable each year for three years flatly contradicts the express language of the Agreement and is rejected. Therefore, unless CASI can point to a provision granting it the authority to terminate Mr. Perry prior to expiration of his three year term, it has breached the Agreement. The provisions in paragraphs eight and nine of the Agreement discuss termination, set out the consequences thereof, and form the basis for the parties' respective contract interpretations.

■ Mr. Perry claims that paragraph 8 of the Agreement, entitled "Termination," contains the exclusive grounds under which the Agreement can be terminated before the end of its stated term. He says that by terminating Mr. Perry for a reason other than death, disability, or for cause, CASI breached the Agreement. However, CASI relied upon another contract provision as authority for Mr. Perry's termination. In its letter dated September 30, 1997, CASI informed Mr. Perry that he was being terminated effective October 1, 1997, pursuant to Section 9C of the Employment Agreement, which provides in relevant part as follows:

*In the event that the Executive is terminated for reasons other than for cause, disability, or voluntary resignation, the Executive shall receive severance pay equaling six months of his salary at the rate in effect as of the Date of Termination . . . . (emphasis added)*

This language certainly suggests that CASI may terminate Mr. Perry for "reasons other than" those stated elsewhere in the Agreement provided it pays him six months of severance pay. Otherwise, this provision is rendered mere surplusage, a result contrary to established principles of contract interpretation.

Attempting to avoid making the aforementioned language superfluous, Mr. Perry offers an alternative interpretation: the provision applies in the event that CASI chooses, at the *end* of the three year term, not to renew his contract. Mr. Perry's argument that 9.C. entitles him to severance pay if his contract is not renewed is not persuasive. First, the provision makes no mention of nonrenewal nor does the portion of the Agreement dealing with renewal of the contract mention non-renewal as "termination." These terms are not generally interchangeable in common contract parlance or business practice, nor is severance generally received upon non-renewal of a contract. Severance is a common business term and practice which refers to pay received in the event one's employment is terminated, i.e. ended prior to the anticipated expiration, whereas non-renewal is a mere refusal to renew or continue a relationship after its expiration. Mr. Perry's view that Section 8 contains the exclusive grounds for termination would be more compelling if the contract drafters used exclusive language, e.g. "the following are the only grounds under which the agreement may be terminated," but the Agreement contains no such language.

Thus, the most reasonable interpretation of the Agreement is that 9.C. provides an independent ground for termination "for reasons other than" those expressly laid out in the previous paragraph, with a penalty therefore, i.e. six months of severance pay. Section 8. provides three grounds under which CASI "may" terminate the Agreement without having to pay severance. This is the only construction that does not distort or render surplusage any language in the Agreement. This interpretation does not, as Mr. Perry suggests, create an at-will relationship whereby either party can walk away from the relationship with no consequences. To the contrary, terminating Mr. Perry came at a rather high price to CASI—a not for profit agency not flush with cash reserves.

However, although CASI has not breached the Agreement by terminating Mr. Perry for a reason not specifically enumerated in the Agreement, it has breached the Agreement by failing to pay Mr. Perry all of the compensation to which he is entitled under its terms. Paragraph 9.B. applies to *all* terminations and states as follows:

> If the Executive's employment shall be terminated, the Employer shall pay and provide to the Executive within thirty days of the date of termination: his full earned Compensation and benefits through the date of Termination ... *and, if applicable, severance benefits (as provided for below). (emphasis added).*

Therefore, CASI was obligated under the Agreement to pay Mr. Perry his full earned compensation and benefits in addition to the severance pay.

The parties freely entered into a written employment agreement which provided that Mr. Perry would be employed by CASI for three years and that if his employment was terminated before the end of the agreed-upon three-year term, CASI would have the obligation of making severance payments equal to six month's salary in addition to his accrued compensation and benefits at the date of termination. CASI is therefore in breach of the Agreement insofar as it has only paid Mr. Perry his severance.

### V. *Plaintiff's Motion for a Protective Order*

Mr. Perry moves for a protective order due to CASI's alleged harassment of a witness, Ms. Origel. Mr. Perry claims that CASI deliberately stopped payment on a check to Ms. Origel because of her affidavit in this case. Mr. Perry provides no legal authority in support of his motion. As a threshold matter, it is doubtful that Mr. Perry has standing to move for a protective order on behalf of a non-party witness. *See, e.g., Owens v. Hurley,* 153 F.3d 728 (10th Cir.1998) (§ 1514 provides that a district court may issue a protective order prohibiting harassment of a witness upon application of an attorney for the government only). Nor has Mr. Perry offered anything more than conclusory allegations that the action taken by CASI was in any way related to Ms. Origel's affidavit. This motion is therefore denied.

The defendant's motion for summary judgment is DENIED with respect to Mr. Perry's discrimination claims. With respect to the contract claims, the plaintiff's motion for summary judgment is GRANTED in part as follows: the defendant had a right to terminate the Employment Agreement without cause; however, the plaintiff is entitled to receive the accrued compensation and benefits as provided in paragraph 9.B. of the Employment Agreement. The plaintiff's motion for a protective order is DENIED. The parties' various motions to strike affidavits or portions thereof are DENIED as moot.