**Vickie A. CATLEY, Plaintiff,**

v.

**GRAPHIC COMMUNICATIONS INTERNATIONAL UNION, LOCAL 277–M, Defendant.**

No. 95–C–0177.

United States District Court, E.D. Wisconsin.

Oct. 23, 1997.

Sally A. Piefer, Shindell & Shindell, Milwaukee, WI, for Plaintiff.

Naomi E. Soldon, Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, Milwaukee, WI, for Defendant.

### *MEMORANDUM AND ORDER*

GORENCE, United States Magistrate Judge.

Plaintiff Vickie Catley filed this civil action on February 15, 1995, alleging sex discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1991. On March 17,1995 defendants, Graphic Communications International Union, Local 277M (GCIU) and Thomas Peavler filed their answer to plaintiff's complaint. On March 20,1996, pursuant to the stipulation of the parties, defendant Thomas Peavler, an agent of GCIU, was dismissed without prejudice from this action. The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Rule 73(b) of the Federal Rules of Civil Procedure.

The complaint alleges that the defendant discriminated against the plaintiff in the terms and conditions of her employment because of her female gender in violation of § 703 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e(C)(3). In her first claim alleging sex discrimination, the plaintiff alleges that the defendant discriminated against by acquiescing in unlawful conduct, and refusing to provide her assistance in pursuing grievances regarding sexual harassment. (Plaintiff's Complaint ¶ 28). She further alleges the defendant failed to assist her in filing grievances she wanted to pursue regarding sexual harassment and by ultimately assisting in her termination. (Complaint ¶¶ 29, 33). In her second claim, alleging sexual harassment against the union, the plaintiff alleges that Thomas Peavler and other union members, many of whom were union representatives, engaged in sexual harassment of the plaintiff and that the union is responsible for the conduct of each of these individuals under agency principles. (Complaint ¶ 35). She also alleges that the union knowingly permitted the sexually harassing conduct of its members and representatives by failing to investigate or correct instances of sexual harassment reported by the plaintiff. (Complaint ¶ 36). The plaintiff received a written notice of termination on August 12, 1991. (Complaint ¶ 24).

Prior to filing this action, the plaintiff filed a timely complaint with the Equal Employment Opportunity Commission (EEOC) on June 1, 1992. (Complaint ¶ 26[a]). The complaint, which named defendant GCIU as the entity that discriminated against her based on her sex, charged that the GCIU failed to represent her with respect to the incidents resulting in her discharge on August 12, 1991. On November 22, 1994, the plaintiff received a right to sue notice from the EEOC. (Complaint, ¶ 26[d]).

Presently pending before this court are the defendant's motion for summary judgment, the plaintiff's motion to strike additional materials submitted with the defendant's reply brief on the timeliness of the sexual harassment issue, and the defendant's motion for an order to accept additional evidentiary materials submitted with its reply brief. These motions will be addressed herein.

## PLAINTIFF'S MOTION TO STRIKE AND DEFENDANT'S MOTION TO ACCEPT ADDITIONAL EVIDENTIARY MATERIALS

■ The plaintiff seeks an order striking additional material submitted with the defendant's reply brief on the timeliness of the sexual harassment issue asserting that such submissions are in violation of Local Rule 6.01(b) (E.D.Wis.). The defendant has filed a motion for an order to accept additional evidentiary materials submitted with its reply brief.

The plaintiff argues that because defendant did not submit the Affidavit of Suzanne J. Westlow (Westlow Aff.) with its initial brief on the timeliness of the plaintiff's sexual harassment claim, instead including the affidavit with its reply brief, the affidavit should be stricken from the record. Local Rule 6, Section 6.01(a) (E.D.Wis.) states that every motion should be accompanied by supporting briefs, affidavits or other documents and, if the movant fails to do so, the court can deny the motion. Section 6.01(b) of the Rule provides that the opposing party should serve an answering brief and affidavits or other documents and that the movant may then serve a reply brief to this answer.

■ As observed in *Baugh v. City of Milwaukee*, 823 F.Supp. 1452, 1456–57 (E.D.Wis. 1993), *aff'd*, 41 F.3d 1510 (7th Cir.1994), "[i]t seems absurd to say that reply briefs are allowed but that a party is proscribed from backing up its arguments in reply with necessary evidentiary material." Furthermore, "where the reply affidavit merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for the entry of summary judgment, reply papers—both briefs and affidavits—may properly address those issues." *See also, Beck v. University of Wisconsin Board of Regents*, 75 F.3d 1130, 1134 n * (7th Cir.1996) (quoting *Baugh*, 823 F.Supp. at 1457).

The court notes that the plaintiff relies upon *Center Development Venture v. Kinney Shoe Corp.* 757 F.Supp. 34, 36 (E.D.Wis.1991) and *Boustead v. Barancik*, 151 F.R.D. 102, 106 (E.D.Wis.1993). However, unlike those cases, the challenged affidavit in this case

merely responds to an issue raised by the plaintiff in her responsive brief—it does not raise new factual assertions which would leave the opposing side with no opportunity to respond.

The defendant's affidavit supports its position that the plaintiff was represented by counsel at the time she filed her claim with the EEOC and is relevant to the timeliness issue. That issue was raised by the plaintiff when she suggested that the court apply a liberal standard in deciding whether the plaintiff had presented her sexual harassment claim to the EEOC. *See* Plaintiff's Response Brief on the Timeliness of the Sexual Harassment Issue at 7. In light of the foregoing, the plaintiff's motion to strike will be denied and the defendant's motion for an order to accept additional evidentiary materials submitted with its reply brief will be granted.

### *SUMMARY JUDGMENT MOTION*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *McNeal v. Macht,* 763 F.Supp. 1458, 1460–61 (E.D.Wis.1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of showing the needlessness of a trial—(1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law—is upon the movant.

However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Anderson,* 477 U.S. at 267, 106 S.Ct. at 2519–20; *see also, Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553. "Rule 56(c) *mandates* the entry of summary judgment, ... upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552 (emphasis added). All inferences are taken in the light most favorable to the nonmoving party. *Matter of Wade,* 969 F.2d 241, 245 (7th Cir.1992). Defeating summary judgment requires more than just a "swearing match"; rather, the nonmoving party must present some evidence that a genuine issue of material fact exists. *Id.* Nonetheless, matters of credibility are not subject to resolution upon summary judgment. *Wilson v. Williams,* 997 F.2d 348, 350 (7th Cir.1993).

The defendant seeks summary judgment pursuant to Fed.R.Civ.P. 56, asserting that the plaintiff cannot establish a fair representation claim as a matter of law because she did not file a grievance at any time during her employment or upon her termination. The defendant further contends that the plaintiff cannot meet the "extremely high" standard for a fair representation claim and, therefore, it is entitled to summary judgment.

In opposing the motion, the plaintiff contends that the defendant is attempting to convert her Title VII claim into a claim cognizable only under § 301 of the Labor Management Relations Act (LMRA), the federal law which governs disputes under a collective bargaining agreement. The plaintiff further contends that there are a "myriad" of contested material facts supporting her claims that she was subjected to a "severe and pervasive hostile environment to which the [defendant] acquiesced and in which it participated." Plaintiff's Brief Opposing Defendant's Motion for Summary Judgment at 1. She also alleges that the defendant "allowed her employer to terminate her without providing to her the representation to which she was entitled because of her gender and her complaints of sexual harassment by male union members." *Id.* at 1–2.

As a result of the divergent approaches taken by the parties in addressing the summary judgment motion, the court conducted

a hearing to hear argument on the issues of whether the plaintiff's sexual harassment claim is properly before the court and the appropriate standards for claims based on a breach of duty of fair representation and acquiescence in sexual harassment. Thereafter, the parties submitted supplemental briefs on the timeliness of the plaintiff's sexual harassment claim.

### Sexual Harassment Claim

The nature of the complaint filed with the EEOC raises the issue of whether the plaintiff's allegations of sexual harassment were included in the plaintiff's EEOC charge against the union. Title VII prohibits sexual harassment that takes the form of a hostile work environment. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Sexual harassment is actionable if it is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] environment and create an abusive work environment'." *Id.* at 67, 106 S.Ct. at 2405. The challenged conduct must be severe or pervasive enough "to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).

As a general rule, a Title VI plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge. *Alexander v. Gardner–Denver, Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); *Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994). This rule serves a dual purpose. It affords the EEOC and the employer an opportunity to settle the dispute through conference, conciliation and persuasion. *Id.* at 44, 94 S.Ct. at 1017–18. It also gives the employer some warning of the conduct about which the employee is aggrieved. *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir.1992). Although the rule is not jurisdictional, it is a condition precedent with which Title VII plaintiffs must comply. *Cheek,* 31 F.3d at 500.

■ Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role as well as deprive the charged party of notice of the charge. *Id.* Because most EEOC charges are completed by lay persons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint. *Id.* at 500.

■ Under the test for determining whether an EEOC charge encompasses the claims in a complaint, the Title VII plaintiff has significant leeway: all Title VII claims set forth in a complaint are cognizable that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins. Inc.,* 538 F.2d 164, 167 [7th Cir.] [en banc] (quoting *Danner v. Phillips Petroleum Co.,* 447 F.2d 159, 162 [5th Cir.1971]), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 [1976]). The second part of the test is difficult to apply because it requires speculation as to what the EEOC might or might not discover in the course of an investigation. *Cheek,* 31 F.3d at 500.

■ In this case, the plaintiff was represented by counsel as of October 29, 1991, with regard to "legal claims which arise from the union's breach of its fiduciary duties and its duty of fair representation." *See,* Appendix to Plaintiff's Brief Opposing Defendant's Motion for Summary Judgment, Affidavit of Anne B. Shindell (Shindell Aff) ¶ 2, Exh. A at 1; *see also,* Westlow Aff. ¶¶ 4 & 5. The plaintiffs EEOC charge against the union was filed on June 1, 1992, and the plaintiff was represented by counsel at that time. (Affidavit of Vickie A. Catley filed Jan. 10, 1997 [Catley Aff. II], ¶ 2 & 3). The plaintiff checked the "sex" discrimination box on her EEOC charge form. In the body of her charge, the plaintiff stated that she believed that the union failed to represent her with respect to the incidents resulting in her discharge on August 12, 1991, and that she believed that she had been discriminated against based on her sex. Specifically, she stated,

I. I began working for Moebius Printing in January of 1989 and am a member of GCIU. On August 12, 1991, I was discharged from my employment. The Union failed to represent me with re-

spect to the incidents resulting in my discharge.

II. I was not given any reason as to why the Union would not represent me.

III. I believe that I have been discriminated against based on my sex, female, in violation of Title VII of the Civil Rights Act of 1954, as amended.

*See* Defendants' Brief in Support of Motion to Dismiss, Exh. A.

Two affidavits were filed with the plaintiff's EEOC complaint against her former employer, Moebius Printing (Moebius), which was filed contemporaneously with the plaintiff's complaint against the union. *See* Declaration of Chester V. Bailey (Bailey Dec.) ¶ 5, Catley Aff. II ¶¶ 4 & 5. One of the affidavits is typed on an EEOC affidavit form and references the other affidavit in the first paragraph. *See* Bailey Dec. ¶ 5 and attachments thereto. The referenced affidavit was prepared by the plaintiff's attorney. (Catley Aff. II ¶ 3).

The referenced affidavit states: "The events and circumstances described in paragraphs 2–11 are intended to provide background information for the incident which is the basis of this complaint: the termination of my employment on the basis of sex." (Exh. B ¶ 1 to Catley Aff. II). Such affidavit contains statements that the plaintiff was sexually harassed by certain supervisors and co-workers. (Exh. B ¶¶ 4, 5, 7, 8 to Catley Aff. II). It also states that she attempted to resolve the problems through the union, "but the union representatives either refused to help me, or were engaging in the discriminatory and harassing behavior themselves." (Exh. B ¶ 8 to Catley Aff. II).

The plaintiff went to the EEOC office on June 1, 1992, intending to file a single charge against both the union and Moebius. (Catley Aff. II ¶ 4). She was advised by the EEOC intake officer that separate charges had to be filed against each entity. (Catley Aff. II ¶ 4). The plaintiff intended and understood that the EEOC officer would attach a copy of the affidavit which is referenced in the EEOC form affidavit to each of the charges. (Catley Aff. II ¶ 5 and Exh. B). The plaintiff was not aware that the affidavit in question had not been attached to the charge filed against the union until she was advised of that fact

by her attorney on January 6, 1997. (Catley Aff. II ¶ 5).

In the instant case, the EEOC charge is similar to that filed in *Rush,* 966 F.2d at 1110. The plaintiff, who was a black woman, "made specific reference to her termination and then in the next sentence complained generally of racial discrimination." *Id.* The question before the court was whether such an "open-ended charge can support any claims that may fall within its range." *Id.*

In *Rush,* the actual typewritten charge the plaintiff had filed with the EEOC only made reference to her termination and to her belief that she had been discriminated against because of her race. However, on the same day, Mrs. Rush also submitted a three page, handwritten "EEOC Affidavit" which made explicit references to the employer's allegedly discriminatory promotion policies. The determination that the plaintiff's first two claims—for racial discharge and denial of promotion—were preserved was upheld by the appellate court. However, the court agreed that the racial harassment claims were never presented to the EEOC and, therefore, were not preserved.

The court held that the requirement for some specificity in a charge is not a "mere technicality." *Id.* at 1111. The court stated that "some detail, beyond a statement that 'I believe I've been discriminated against because of my race, Black' is necessary to allow the agency to perform its statutory duty." *Id.* In so holding, the court further observed that the plaintiff was apparently advised by an attorney, even at the stage of filing her charge with the EEOC and, therefore, it was not unreasonable to require some additional specificity or detail as a condition precedent for permitting the plaintiff to assert a claim of racial harassment. *Id.* at 1112.

In *Cheek,* the court addressed the issue of whether a claim of sexual harassment alleged in the plaintiff's complaint could be reasonably inferred from the facts alleged in the EEOC charge. The court observed that "ordinarily, a claim of sexual harassment cannot be reasonably inferred from allegations in an EEOC charge of sexual discrimination." 31 F.3d at 503 (citing *Nicol v. Imagematrix, Inc.,* 767 F.Supp. 744, 752–54 [E.D.Va.1991];

*Torriero v. Olin Corp.*, 684 F.Supp. 1165, 1170 [S.D.N.Y.1988]; *cf. Baltzer v. City of Sun Prairie/Police Dep't*, 725 F.Supp. 1008, 1019 [W.D.Wis.1989] [allegation of discriminatory restrictions on pregnant police officers not reasonably related to administrative charge of sexual harassment and hostile environment.] ).

In *Cheek*, the court determined that the description of the illegal contact in the plaintiff's charge supported one theory, and one theory only. In so concluding, the court compared the definition of sexual harassment to the conduct alleged in the plaintiff's EEOC charge.

> The EEOC defined sexual harassment as "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature ... [when] such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a); *see also Meritor Savs. Bank v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986).

As in *Cheek*, the plaintiff's EEOC charge against the union does not describe the type of conduct that would fit into this definition. Moreover, like the plaintiff in *Rush*, the plaintiff was represented by counsel at the time she filed her EEOC charge. Neither the type of discrimination alleged by the plaintiff, "sex", nor her descriptive statement of the alleged discrimination by the union state a charge of sexual harassment. The plaintiff's statement that "I believe that I have been discriminated against based on my sex, female," like the statement in *Rush*, 966 F.2d at 1111, is insufficient to allow the agency to perform its statutory duty.

The court notes that sexual harassment was referenced in the affidavit which the plaintiff filed with her charge against Moebius. Even if the affidavit had been attached to the charge against the union, it did not provide notice to the union of a sexual harassment claim. The precatory language to that affidavit explicitly states that "[t]he events and circumstances described in paragraphs 2–11 are intended to provide background information for *the incident which is the basis of this complaint: the termination of my employment on the basis of sex.*" (Exh. B ¶ 1 to Catley Aff. II). (Emphasis added.) Thus, the affidavit clearly defines the plaintiff's complaint as being based on her termination due to her gender. Thus, this court concludes that the plaintiff's claim of sexual harassment against the union is not within the scope of these judicial proceedings because she failed to include such a claim in the EEOC complaint she filed against the union.

■ Moreover, contrary to the plaintiff's contentions, her allegations of sexual harassment were not timely under a theory of "continuing violations." *See Galloway v. General Motors Service Parts Operations.* 78 F.3d 1164, 1166 (7th Cir.1996). In *Galloway*, the court clarified the case law regarding continuing violations and held that a plaintiff may not base her suit on conduct that occurred outside the statute of limitations "unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in the light of events that occurred later, within the period of the statute of limitations." 78 F.3d at 1167. However, in instances when a long-continued series of harassing acts definitely are a series, form a pattern, and are not merely a set of discrete events, yet it was evident long before the plaintiff sued that she was the victim of harassment, she can still sue provided that the last act occurred within the statute of limitations. *Id.*

The plaintiff's deposition testimony describes four incidents of harassment while she was a fork lift operator.[1] *See* Appendix 2, Plaintiff's Brief Opposing Defendant's Motion for Summary Judgment (Appendix); Affidavit of Sally A. Piefer [Piefer Aff.], Exh. A at 84. One incident involved a man in a blue shirt who walked up to her and asked "do want to go shopping and we can go out." (Appendix, Piefer Aff. Exh. A at 52). The plaintiff said "no" and "he said something

---

1. The only time the plaintiff was represented by the union was when she was a forklift driver.

(Affidavit of Naomi E. Soldon [Soldon Aff.] and Deposition of Vickie Catley at 25).

about [her] having a fat ass." (*Id.*). The plaintiff also related an incident when she did not want to go out with somebody and "they" started screaming "dike" at her. (*id.* at 58). The plaintiff recounted a third incident when Paul Leach was shouting obscenities at the plaintiff and acting so strange and violent that the plaintiff was afraid that he was going to hurt her. The plaintiff also testified regarding a fourth occasion when "guys on one of the presses" were throwing things at her. (*Id.* at 72–73).

From the plaintiff's description, these latter two incidents, although arguably harassment, do not appear to be sexual in nature. Moreover, the incidents upon which the plaintiff relies are "merely a set of discrete events" and do not support a theory of continuing violations. *See Galloway,* 78 F.3d at 1167. They do not involve the same actors and there is no similarity between the episodes.

In sum, this court will grant that portion of the defendant's motion for summary judgment seeking dismissal of the plaintiff's second claim which alleges that the union is liable for sexual harassment.

### Sex Discrimination Claims

*Failure to Provide Assistance with
Grievances and Failure to
File Grievances*

■ The plaintiff alleges that the defendant discriminated against her based on her sex by refusing to provide her assistance in pursuing grievances regarding sexual harassment and by failing to file grievances on her behalf and by ultimately assisting in her termination. Section 2000e–2(c) of Title 42 of the United States Code provides that:

It shall be an unlawful employment practice for a labor organization—

(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;

(2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities

or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or nation origin; or

(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

The term "labor organization" is defined in 42 U.S.C. § 2000e(d) as a labor organization engaged in an industry affecting commerce and any agent of such organization. The conditions under which a labor organization shall be deemed to be engaged in an industry affecting commerce is further described in 42 U.S.C. § 2000e(e).

■ To establish a *prima facie* case against a union under Title VII, a plaintiff must show: 1) the employer violated the collective bargaining agreement with respect to her; 2) the union let the breach go unrepaired, thereby breaching its own duty of fair representation; and 3) some evidence indicates that gender animus motivated the union. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Greenslade v. Chicago Sun–Times Inc.,* 112 F.3d 853, 866 (7th Cir.1997); *Bugg v. Int'l Union of Allied Industrial Workers of America,* 674 F.2d 595, 598 n. 5 (7th Cir.) *cert. denied,* 459 U.S. 805, 103 S.Ct. 29, 74 L.Ed.2d 43 (1982). The plaintiff must demonstrate each of these elements by the preponderance of the evidence. *Greenslade,* 112 F.3d at 866.

■ When a Title VII claim is predicated on a breach of duty to represent, a plaintiff must show that there was a breach of that duty and that there was "some indication that the Union's actions were motivated by discriminatory animus." *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 868 (7th Cir. 1985); *Carter v. Local No. 789,* 963 F.2d 1078, 1082 (8th Cir.1992); *Greenslade v. Chicago Sun–Times,* 930 F.Supp. 323, 330 (N.D.Ill.1996), *affirmed,* 112 F.3d 853 (7th Cir.1997). The union's refusal to handle a grievance on the basis of discriminatory animus violates the duty of fair representation. *Martin v. Youngstown Sheet & Tube Co.,* 911 F.2d 1239, 1248 (7th Cir.1990).

In *Greenslade,* dismissal of the plaintiff's Title VII claim predicated on a breach of a duty to represent was upheld because the plaintiff failed to produce evidence that the union had a gender tainted motivation. There was no evidence that the union had treated the plaintiff differently than similarly situated females. 112 F.3d at 867.

In *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 666–69, 107 S.Ct. 2617, 2623–25, 96 L.Ed.2d 572 (1987), the Supreme Court held that under Title VII a union may not refuse to file a valid discrimination claim against an employer on behalf of one of its members simply because that member belongs to a particular minority group. In *Goodman,* the unions were found to have discriminated on racial grounds by 1) failing to challenge discriminatory discharges of probationary employees, 2) failing and refusing to assert racial discrimination as a grounds for grievances, and 3) tolerating and tacitly encouraging racial harassment. *Id.* at 665, 107 S.Ct. at 2623.

The collective bargaining contract at issue in *Goodman* had contained an express clause since 1965 binding both the employer and the unions not to discriminate on racial grounds. *Id.* at 666, 107 S.Ct. at 2623–24. However, the employer was discriminating against blacks in discharging probationary employees. The unions were aware of these actions but refused to do anything about them by way of filing proffered grievances or otherwise. Moreover, the unions had ignored grievances based on instances of harassment which were indisputably racial in nature and had "regularly" refused to include assertions of racial discrimination in grievances that asserted other contract violations. *Id.* The Court upheld the determination that such conduct violated 42 U.S.C. § 2000–2(c)(1). *Id.* at 667, 107 S.Ct. at 2624. The Court declined to address the "rather abstract observation" by the district court that mere union passivity in the face of employer discrimination renders the union liable under Title VII because the evidence proved "far more" than mere passivity. *Id.* at 665–66, 107 S.Ct. at 2623–24.

In *Marquart v. Lodge 837,* 26 F.3d 842, 853 (8th Cir.1994), the plaintiff had alleged that various male employees and union members harassed her because she was a woman and that the harassment affected her conditions of employment by creating a hostile work atmosphere. She further had alleged that the union knew about the harassment, but refused to process her complaint because the individuals who were harassing her were favored male members of the union. In *Marquart,* the court stated that a claim that the union refused to process the plaintiff's sexual harassment complaint, although it did process the complaints (not based on sexual harassment) of her male colleagues, if proven, would establish a Title VII violation. *Id.* at 853 (citing *Carter v. United Food & Commercial Workers,* 963 F.2d 1078, 1082 [8th Cir.1992]).

Additionally, the court stated that if the union refused to process the sexual harassment complaints of its male and female members, the union would still violate Title VII because a union may not help or encourage its employer to discriminate. *Marquart,* 26 F.3d at 853 (citing *Goodman,* 482 U.S. at 669, 107 S.Ct. at 2625) ("A union which intentionally avoids asserting discrimination claims, either so as not to antagonize the employer and thus improve its chances of success on other issues, or in deference to the perceived desires of its white membership, is liable under both Title [VII] and Section 1981, regardless of whether, as a subjective matter, its leaders were favorably disposed to minorities") (quoting *Goodman v. Lukens Steel Co.,* 580 F.Supp. 1114, 1160 [E.D.Pa.1984] [Interpreting Title VII on the issue of racial harassment] [emphasis in *Marquart*]); *see also, Martin v. International Assn. of Machinists and Aerospace Workers,* 859 F.2d 581, 584 (8th Cir.1988).

Here, the plaintiff's deposition testimony sets forth facts relating to four incidents when the plaintiff brought problems of harassment to the attention of a union steward. (*See* Appendix, Piefer Aff., Exh. A at 84). The plaintiff testified about an incident that she had attempted to discuss with Tom Peavler, a union steward, regarding a guy in a blue shirt who walked up to her and asked "do you want to go shopping and we can go out." (Appendix, Piefer Aff. Exh. A at 52). The plaintiff said "no" and "he said something about [her] having a fat ass." (*Id.*).

The plaintiff testified that she does not "remember everything else." (*Id.*).

When she told Tom Peavler, he responded that they were just making fun of the plaintiff because she was so unattractive. (*Id.* at 55). She asked him if the union would help and if there was something that could be done to get them to leave her alone. (*Id.* at 55). Although the plaintiff could not remember what he said, she testified that he was insulting to her. (*Id.* at 56). Tom Peavler did not mention anything about the grievance procedure. He did not decline to help the plaintiff. "He just never did." (*Id.* at 56).

The plaintiff also related an incident during the time she was a forklift operator when she did not want to go out with somebody and "they" started screaming "dike" at her. (*Id.* at 58). She spoke to a union steward on the second shift whose name she does not know about this incident. (*Id.* at 60). She stated that "they" were yelling and screaming at the plaintiff and calling her a "dike" and that it was making it impossible for her to do her job. (*Id.* at 60–61). The plaintiff does not recall what the steward said, but she believed that he said he would look into the matter. (*Id.* at 61). A few days after the first conversation she approached the steward and asked if there was anything that could be done. (*Id.*) To the best of her recollection, he told her that "there was nothing they could do." (*Id.*) The plaintiff also reported the "dike incident" to management. (*Id.* at 62). The plaintiff did not file a grievance regarding the incident. (*Id.* at 61).

The plaintiff recounted a third incident when Paul Leach was shouting obscenities at her and acting so strange and violent that the plaintiff was afraid that he was going to hurt her. She again spoke to Tom Peavler, who was still a union steward at that time, about this incident. (*Id.* at 64–67). The plaintiff could not remember Peavler's response. (*Id.* at 67).

The plaintiff also testified regarding a fourth occasion on which she approached a union steward because "guys on one of the presses" were throwing things at her. (*Id.* at 72–73). The plaintiff does not remember which union steward she spoke to or his response. (*Id.*) However, she remembers that she spoke to the union steward and that

he "thought it was funny." (*Id.* at 73). The plaintiff did not file a grievance regarding this incident because she did not know she could. (*Id.* at 74). These are the only incidents reported to a union representative. (*Id.* at 177).

The court notes that on October 29, 1991, one of the plaintiff's attorneys sent a letter by certified mail, return receipt requested, to Christopher Yatchak, vice-president of GCIU. *See* Shindell Aff ¶ 2 & Exh. A thereto at 1. That letter states: "Please consider this letter a formal grievance pursuant to the terms of the collective bargaining agreement." (*Id.*) The letter advised that Ms. Catley had authorized her attorneys "to pursue formal legal action on her behalf but has also asked that [the attorneys] attempt an informal resolution of her claims prior to instituting a formal action." (*Id.* at 5–6). The officers of the union did not view the letter as a grievance but rather as a threat of litigation because of its timing, tone, and content. (Supplemental Affidavit of Christopher J. Yatchak, ¶ 2).

The plaintiff testified that she was aware that the union had represented male members without a request for assistance. (*Id.* at 162). Specifically she testified that when one male employee wanted to get a particular job, a union steward came to him saying that the union would help him get the job. (*Id.* at 162–63). The plaintiff had also listed another male employee who the union had represented without a request for assistance. (*Id.* at 162). However, at her deposition, she was unable to recall the individual or the incident. (*Id.* at 164). She could think of no other persons who had knowledge that the union had represented male members during disciplinary or investigatory proceedings without a request for assistance. (*Id.* at 164). *See also*, Plaintiff's Response to Mandatory Interrogatories Pursuant to Local Rule 7.07, Response to Interrogatory No. 1 at 2–3, Affidavit of Naomi Soldon ¶ 3, Deposition Exhibit 6.

Here, the plaintiff acknowledged that she did not file grievances regarding the four incidents. However, she did ask the union stewards if there was anything that could be done. (*See Id.* at 56, 60–61). She also as-

serts that she filed a grievance by means of her October 29, 1991, letter to Mr. Yatchak, vice-president of the union.

██ An employee must ask the union to initiate the grievance process. *Mechmet v. Four Seasons Hotels,* 825 F.2d 1173, 1178 (7th Cir.1987); *see also, Hiner v. BDP Company,* 716 F.Supp. 1152, 1155 (S.D.Ind.1989). The parties disagree regarding whether the plaintiff's actions and, particularly, the October 29, 1991, letter of plaintiff's counsel to the union were sufficient to constitute a formal grievance.

Regardless, even if the plaintiff's actions were sufficient to initiate the grievance process and the union failed to pursue the grievance, the plaintiff faces a more formidable problem: she has failed to present evidence that the union treated similarly-situated male employees more favorably than it treated her. The only evidence in the record on this issue is the plaintiff's testimony that the union gratuitously offered one male employee assistance in getting a job. The record is devoid of evidence that the union had represented male members during investigatory or disciplinary proceedings without a request for assistance. Thus, there is no evidence that the union treated the plaintiff differently than similarly situated males.

Viewing the evidence in the light most favorable to the plaintiff, she has failed to show that the union's actions "were motivated by discriminatory animus." *Babrocky,* 773 F.2d at 868. She has not presented any evidence suggesting that the union's decision not to pursue a grievance "is arbitrary or based on discriminatory or bad faith motives." *Greenslade,* 112 F.3d at 867 (citing *Griffin v. Air Line Pilots Assn. Int'l.,* 32 F.3d 1079, 1083 [7th Cir.1994]).

The plaintiff has proffered no facts indicating that the union treated her differently than any other union member with regard to investigatory or disciplinary proceedings. Thus, the plaintiff has failed to establish all the requisite elements for a *prima facie* case of sex discrimination by the union based on its alleged failure to provide her with assistance in pursuing grievances regarding sexual harassment, by failing to file grievances on her behalf and by ultimately assisting in her termination.

### Acquiescence in Unlawful Conduct

██ The complaint further alleges that the defendant discriminated against the plaintiff in the terms and conditions of her employment because of her female gender in violation of Title VII by acquiescing in the employer's unlawful conduct. In advocating the acquiescence theory, the plaintiff relies upon *Woods v. Graphic Communications,* 925 F.2d 1195, 1200 (9th Cir.1991). In *Woods* the court stated that a union "may also" be liable under Title VII for acquiescing in a racially discriminatory work environment. Other courts have taken a contrary view.

In *York v. American Telephone & Telegraph Co.,* 95 F.3d 948, 955–957 (10th Cir. 1996), the court elaborated on the requirements to establish union acquiescence in a company's prohibited discrimination. The court observed that "[a] union's statutory duty of fair representation does not oblige it to take action on every grievance by every member." *Id.* at 956 (quoting *Vaca v. Sipes,* 386 U.S. 171, 191–92, 87 S.Ct. 903, 917–18, 17 L.Ed.2d 842 [1967]). "Mere inaction does not constitute acquiescence." *Id.* at 956. Acquiescence requires: 1) knowledge that prohibited discrimination may have occurred, and 2) a decision not to assert the discrimination claim. *Id.* at 956–57 (citing *Goodman,* 482 U.S. at 669, 107 S.Ct. at 2625). The court concluded that the plaintiff had failed to present evidence from which a reasonable jury could conclude that the union possessed the requisite knowledge. *Id.* at 957. In *York,* the plaintiff's employer was a party to the action.

In *Martin v. Local 1513,* 859 F.2d 581, 584 (8th Cir.1988), the court raised concerns with regard to plaintiff's theory that the defendant was liable under Title VII for acquiescence in the company's prohibited employment discrimination. In advancing the acquiescence theory, the plaintiff had relied upon *Romero v. Union Pac. R.R.,* 615 F.2d 1303, 1310 (10th Cir.1980), which holds that "[i]f a union does not take action against discriminatory practices by an employer, it may be held responsible for those practices."

*Martin* noted two difficulties with the plaintiff's "liability by way of acquiescence"

theory. First, the court observed that the theory of *Romero* centers on the fact that the company had committed prohibited employment discrimination. 859 F.2d at 584. Since the plaintiff's employer was not made a party to the litigation, the company's employment practices were not a part of the lawsuit. *Id.* The second difficulty with the plaintiff's argument was that neither the court of appeals for the eighth circuit or the Supreme Court had gone that far in holding a union liable under Title VII. *Id.* at 584. The court in *Martin* relied upon the Supreme Court's specific choice in *Goodman* not to address the issue. It also relied upon the Court's characterization of the district court's declaration "that mere Union passivity in the face of employer discrimination renders the Union liable under Title VII" was a "rather abstract observation." *Id.* (quoting *Goodman*, 482 U.S. at 656, 107 S.Ct. at 2618.) Additionally, the court noted that the Court in *Goodman* took "great pains" to point out that both the district court and the appellate court had held that the case against the unions was "much stronger than one of mere acquiescence." *Id.*

In *Woods*, upon which the plaintiff relies, the court stated that a union "may also" be liable under Title VII for acquiescing in a racially discriminatory work environment, citing *Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297, 1304 (9th Cir.1982), *Kaplan v. International Alliance of Theatrical and Stage Employees and Motion Picture Operators*, 525 F.2d 1354, 1360 (9th Cir.1975) and *Macklin v. Spector Freight Systems, Inc.*, 478 F.2d 979, 989 (D.C.Cir.1973). The court in *Woods* observed that in deciding *Goodman*, the Supreme Court noted the affirmative duty to combat discrimination in the workplace, but did not rely on that duty to find the union liable. *Woods*, 925 F.2d at 1200. Rather, the Court rested its holding on the union's deliberate choice not to process grievances, since the evidence proved "'far more' than mere passivity." *Id.* (quoting *Goodman*, 482 U.S. at 666–67, 107 S.Ct. at 2623–24). The *Woods* court followed *Goodman*, stating that it need not rest its holding on an affirmative duty because the defendant union's acts constituted "more than mere passivity". *Id.*

Neither the Supreme Court nor the court of appeals for this circuit has endorsed a theory of union liability based upon acquiescence to an employer's unlawful discrimination. The Court characterized the concept as a "rather abstract observation." *Goodman*, 482 U.S. at 666, 107 S.Ct. at 2623. Even under *Woods*, union liability under an acquiescence theory is unclear. Notably, the cases cited in *Woods* predate the decision in *Goodman*.

Sound policy reasons underlie the reluctance to extend Title VII liability to unions based on mere acquiescence in unlawful conduct by employers. In the absence of a contrary ruling from the Supreme Court or the court of appeals for this circuit, this court concludes that a portion of the plaintiff's sex discrimination claim which is predicated upon the union's acquiescence in the unlawful conduct is subject to dismissal. *See Martin*, 859 F.2d at 584. Additionally, the plaintiff's former employer is not a party to this action and, as a result, its employment practices are not before this court. *Id.*

In sum, based on the foregoing, the defendant's motion for summary judgment will be granted and the plaintiff's action will be dismissed.

### ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion for summary judgment be and hereby is **GRANTED.**

**IT IS FURTHER ORDERED** the plaintiff's motion to strike additional materials submitted with the defendant's reply brief on the timeliness of the sexual harassment issue be and hereby is **DENIED.**

**IT IS ALSO ORDERED** the defendant's motion for an order to accept additional evidentiary materials submitted with reply brief be and hereby is **GRANTED.**

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.